The case we're going to hear is Elyazidi v. SunTrust Bank. And Mr. Francis, whenever you're ready, we'll hear from you. Good morning, and may it please the Court. I'm Ernest Francis, appearing here today for Mounia Elyazidi. We have made three assignments of error in our opening brief. The first one concerns the violation of the Fair Debt Collection Practices Act by the Appley Mitchell Rubenstein Associates through claiming unearned fees are presently due at the beginning of the case. The district court erred in holding that this was an estimate. It was not an estimate. Those are statements under oath. It was a prayer for relief. No. That's what it was. No, they were statements in affidavits stating that those amounts were due as of the time that the action was filed. That is not a prayer for relief. That's the way you read it. I understand that. I don't understand your position. I didn't understand the brief, and I'll tell you now, and you can explain it. The complaint in this case was a warrant. It's like a precast summary judgment under Virginia law, and it has to be supported under oath. There were two affidavits attached incorporated into it. Is that correct? No. What was filed was a warrant in debt. That is not required. Did it have two affidavits attached to it when it was filed? That's correct, yes. Okay. And the two affidavits, the claim for relief was $2,300 in attorney's fees, and the supporting affidavit said this represents one hour expended, three hours to be expended, and 20 hours for collection to be done. That's how it was explained. Now, is any of that a misrepresentation of fact? It sounds to me like that's forward-looking. The only fact that they stated, we've spent one hour, they estimated three hours for the action and 20 hours for collection, and that's how they explained the justification for $2,300. Now, if we take that to be part of the complaint, you can argue that separately, is that a misrepresentation of fact? Yes. The part of that that deals with the amount for collection subsequent to the judgment is . . . Forward-looking, right? No. They claim that that is based on . . . Experience and other cases they've handled over the years. And what we've alleged, and again, we're here on a dismissal following a Rule 12b-6 motion . . . Except you have to show that's a misrepresentation of fact to state your case. And you have no evidence to suggest 20 hours was a misrepresentation of . . . Actually, it's an estimate, that person said, estimates based on experience and these other cases I've had over the years. The truth of the matter is I tried cases for 20 years, and 20 hours for collection does not sound like a lot of time. And what we alleged in the complaint was that the statement that there are similar cases is wrong. Why is it wrong? Because there are no similar cases. How do you know? Because that's what we've alleged, and I didn't . . . Where is your fact for that? One fact in the record to suggest that's error?  That's what my allegations are. But your allegation has to be more than a mere conclusory statement. It has to be based on something. You have to advance a fact under oath to dispute a fact under oath. But what I'm being required to do then is to prove a negative. You may . . . It's not proving a negative. What you're required to do is to not allege that it's a falsehood until you have some evidence to claim it's a falsehood. And the evidence to claim it's a falsehood is that they don't have a similar case. And tell me how you make that statement. You're making it to us now. I think it borders on the outrageous for you to make that and have no evidence to support it. Because if I were allowed to take their deposition, they would not be able to come up with a similar case. And why do you say that? Because this language that they used in that affidavit . . . I said what evidence do you have that they would not be able to refer to another case? That cost . . . It took them 20 hours. I don't have any evidence at this point. What I have is the allegation that they don't have a similar case. Why don't you move on to something else? Okay. This would not have been treated as an estimate if there was a default judgment entered against my client. And that is the way . . . This case is the case in which they got caught. Because they have a practice . . . Caught doing what? Caught getting unearned attorney's fees. They earned the attorney's fees. The court had a hearing, conducted a hearing, went through every hour. And by the time that hearing was held, the court estimated their fees were in the range of $4,000. They only claimed $2,300. So they actually incurred more than they claimed. That was not an estimate by the court. That was the court's determination based on what had transpired between June of 2012 and February of 2013. That's right. When they file the complaint, they can only look forward as to what it's going to cost because the contract entitled them to up to 25%. So they put in their affidavit, we've spent one hour and we're going to claim 25% because it's not going to be enough to cover us. In this case, because A, B, and C. They then go through the action. The court gets there and now looks historically back at what they spent and found that they spent far more than the 25%. Now, I don't understand where the misrepresentation is anywhere here. Because they don't have those fees as of the time they filed the complaint. Of course not. You still have the action. They're entitled to the fees for prosecuting the action and for collecting. They're entitled to reasonable fees. And the only thing they had as of the time they filed the complaint was an hour to prepare the complaint. I understand that argument. Why don't you go on to something else? Let me ask you sort of a separate, maybe partly related question. Even assuming for a minute that your client would have looked at this and not understood that it was an estimate, thought that what he or she was being told was you owe this much money right now. Can you explain to me how that would affect how the debtor would respond to the debt collection efforts? Which is sort of the requirement for materiality. What difference does it make really? Since it's how much she ended up owing in the end, why would it have affected the way she approached this debt collection effort? My understanding of this Court's determination, or this Court's law on the subject of materiality, is that any statement as to- Let me just cut you off right there. Why don't you just assume with me, just assume, perhaps heroically, this is the standard. Would it affect the way the debtor would respond to the debt collection efforts? Can you just explain to me? This is just like a simple common sense question. What I'm not getting is how this would have affected, in this case, how the debtor would have responded to the debt collection effort. Whether you tell her we estimate you'll owe $2,300, or whether we say right now you owe $2,300, how does that- I mean, this is a genuine question. Is your concern that she'll, I don't know, pay the whole thing at once, and then maybe it wouldn't have ended up being necessary? Is that the idea? The concern is that she would pay it and didn't owe it. So she would make a payment of attorney's fees that she didn't owe. Because she paid right away, the attorney's fees would never actually be incurred? Is that the idea? That's correct. Okay. She would have paid $2,300 in attorney's fees when they had only put in an hour of work. I understand. So did she do that? No. But, again, if this had gone into a default situation, there would have been a default judgment against her for that entire amount, notwithstanding that that was work that was never performed. So she didn't rely on what you say is a material false representation? She didn't rely on it in paying. My understanding of the jurisprudence that has evolved in this court on the subject of materiality is that misrepresentations as to amount are per se material. I will move to our second assignment of error, which is the disclosure- That's actually not accurate. We have come out and it has to be more than de minimis. It has to be something on which she would have acted under the standard. She could have acted. Yeah. But that's not per se any amount. I'll move on to the second assignment of error, which is the disclosure of the Social Security number. And if this judgment is affirmed, the collection agencies will start using that as a basis to compel- Do you have any evidence that the use of the Social Security number was used to extort money from her? No, but it could be used. And what we look at in these cases involving unfair and unconscionable practices- Don't you have to allege a plausible claim that it was used? No. It could be used because the statute is prophylactic. It's designed to prevent abusive practices. And if the holding now is that they can disclose this, then- The statute doesn't talk about Social Security numbers. It talks about unfair practices. And the unfair practice would be to use it extortionately. In other words, to say, I'm going to disclose the Social Security number unless you pay. As I understand, in this case, the evidence indicates that it was just part of a business record, and when you brought it to the attention of the judge, they redacted it. That's correct. But again, if they're allowed to do that, then they will start doing it. And there's nothing in the statute that requires intent as a part of a fair debt collection practices claim. That was what the court held in, again- That makes it unfair. It's unfair because- They made an error, and they never used it that way. They never intended to use it that way. There's no evidence that there was any damage or prejudice. It was included on a billing. That's where they kept the record, and they filed those bills. And as soon as you brought it to their attention, they said, we don't care. You can cross that out. That wasn't our motive. How is that an unfair debt collection practice? Because it can be used as a means to coerce payment of what the debtor doesn't owe. 1692F prohibits unfair debt collection practices, right? That's correct, yes. All right. We don't have an unfair debt collection practice. I would submit that the unfair debt collection practice is the disclosure of the Social Security number. Per se? Per se, yes. All right. Finally, we have the issue of the application of Maryland statutes in Virginia. And the appellees have tried to pigeonhole this as use the label of extraterritorial without providing a definition of how one decides what is extraterritorial and what is not extraterritorial. There's no showing here as to why those statutes should not apply in this case, and I'm talking about the Maryland Consumer Protection Act and the Maryland Consumer Debt Collection Act. There's nothing that conflicts with Virginia law in those statutes. Everything that was done in Virginia was a consequence of what had already occurred in Maryland. The filings were drafted in Maryland. The communications between the counsel and the client occurred in Maryland. And the only thing that occurred after the decisions in Maryland was the handing of this document to the clerk. And that is the necessary act for a violation, right? Not necessarily, because these— You mean if they, in their offices, they make a misrepresentation of a piece of paper on a piece of paper, and then he rolls it up and tosses it in a basket? Violation? This was a misrepresentation under oath. I understand. He makes it under oath in his office. And then he sits there and says, oh, I probably made an error. He tosses it in the basket. Is that a violation of the act? No, but the bulk of the actions that— What occurred in Virginia would never have occurred absent what happened in Maryland. Next, there is Maryland law regulating the conduct of lawyers that extends outside of Maryland. The Mitchell Rubenstein Associates appellee are lawyers. They're subject to the jurisdiction of Maryland, even outside of Virginia, precisely because they are lawyers. But that doesn't make them a violator of the Debt Collection Act. The Debt Collection Act will make a lawyer a debt collector if the lawyer does something to become a debt collector. And he violates the Debt Collection Act if, under Maryland law, he does the same thing as he does under federal law with the intent. Maryland has an intent provision in it. If we don't have a violation of federal law and the violation is the publication of a misrepresentation in the courthouse in Virginia, I don't see how the conduct of the attorney until he files it could be even a violation of Maryland law. The Maryland Consumer Debt Collection Act has an intent requirement. That is not in the Maryland Consumer Protection Act. Again, the issue is what the reach is of these statutes, and Maryland has already decided that its lawyers are subject to control over out-of-state conduct. And I would submit that if that's the way the bar rules are written, that that would be an applicable principle on construing statutes as well. That concludes my remarks. Okay. Thank you, Mr. Francis. Mr. Cantor? Good morning, Your Honors. May it please the Court, my name is Ronald Cantor. I represent the appellee, the law firm of Mitchell, Rubenstein & Associates. Seated at counsel table with me is John Griffin. Mr. Griffin represents SunTrust. In my portion of the argument, I am going to address counts 3, 4, and 6 of the amended complaint, which asserted causes of action under the Fair Debt Collection Practices Act. Those claims were only made against my law firm client. Mr. Griffin is going to argue the issues relating to counts 1 and 2, which were pled under the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act. His client was named at count 2. Both his client and my client were named at count 1. I've asked in the brief for this court to affirm the district court's judgment of dismissal, and I have urged three alternative grounds, each of which were presented below. I first suggested in the brief, and I suggest here, that the Rooker-Feldman Doctrine precluded the court from asserting subject matter jurisdiction over the claims in counts 3 and 4. The second alternative argument was that even if Rooker-Feldman didn't apply, the doctrine of claims preclusion, or res judicata, would bar claims in counts 3 and 4. The third reason for affirmance is that both counts 3 and 4 and count 6, which dealt with the Social Security number, failed to set forth a cause of action for which relief may be granted, and therefore the court properly entered an order of dismissal under Rule 12b-6. I'm going to go in reverse order and talk about the 12b-6 ruling. Can I ask you on the 12b-6? It was unclear to me in the joint appendix what was included as part of the complaint in this case. Was everything that follows the complaint in the JA part of the . . . In other words, it had the affidavits, the pleadings, the testimony, all of that attached to the complaint? Well, certainly the testimony would be in the complaint. No, no, it wouldn't be in the complaint. What was in the complaint . . . I'm asking what is in the complaint filed in this case? Oh, no. I had provided the . . . My recollection was I provided a copy of the general district court lawsuit and the transcripts of testimony as public records that were . . . I'm asking you what was part of the complaint. I think just . . . Okay. It was the amended complaint. I believe just the allegations. I don't think there were any attachments. If I can . . . There are references to exhibits in there. Oh, wait. Yes, okay. Page 6 is the amended complaint. It goes through page 21 . . . 20. Then exhibit A was the affidavit dated February 27, 2013. That was it. Just the amended complaint and the one affidavit was the pleading, the operative pleading. Then when I filed the motion to dismiss the amended complaint, I referred to other records from the general district court including the transcripts of the hearings and the full . . . Well, just a minute. Let's . . . Sure. You can't do that. You're getting yourself into some deep water here on process. Let's just stick with the complaint. Okay. I will do that. There are references to the November 29 affidavit, the June 11 affidavit. Were all these included in the complaint? They're referred to in the complaint. No. And then attached exhibit A, affidavit in support of attorney's fees, which is the February 27 affidavit. I understand the question and that's it. I just need to know what was attached to the complaint. I understand. Attached to the complaint were pages 21 and 22 in the joint appendix. So, if you look at the top, it's document 16-1. And then you go back, it's document 16. Document 16 is the amended complaint. Document 16-1 is the one exhibit that was appended to the amended complaint. If you allow me just a moment, let me review the PACER docket to make sure I'm correct in terms of that was all that was included in 16. Yes, that's all. If you look at page 3, that's all that's included in the amended complaint. You've got the amended complaint, one exhibit. The only other document is the redlined copy of the complaint because in the district court, when you file an amended complaint, you have to give a redlined copy showing your changes. That's all that was in the amended complaint, Your Honor. Was the original complaint the unamended complaint? What's going on with the document on page 32 of the joint appendix? That seems to be sort of the whole crux of the argument. Page 32? Yes. Is that the lawyer said... That was not part of the complaint. Amended complaint. But was it part of an original complaint that was served on either the debtor or debtor's counsel? Let me... Because if not, why are we even talking about this document? I don't get it. Understood. The answer is, according to the PACER, the... No, no, no. This would be PACER. She's asking about the warrant. I know. Filed in Virginia. I know. Did it have the two affidavits attached? Okay. When the warrant and debt was filed in Virginia, yes, those two affidavits were attached. Okay. We're talking about documents, pleadings filed in different courts. If I can summarize, in the federal court action where the amended complaint is the operative document, my review of the record shows that the only exhibit attached to that amended complaint was the February 27, 2013, affidavit. Further, going back to the original collection action, attached to the warrant and debt, which appears at page 30, was an affidavit of account signed by SunTrust and an affidavit in support of fees signed by Ms. Revisman dated June 2012. There's more. There was a Soldiers and Sailors affidavit, and then the demand letter regarding the overdrawn account, and the signature card, and it looks like two account statements, and then the rules and regulations, which are, in fact, the terms of the contract. Who was that served on? I'm just curious. You're talking about the Virginia lawsuit? The Virginia warrant of debt with fees attached. The Virginia warrant of debt is served on the defendant. Then when, of course, she's represented by counsel, all further papers, which would include the subsequent affidavit, would be served on counsel. So on both the defendant and counsel? No, no, no. If you're in state court and counsel enters an appearance in an action, further documents, including, for example, the Bill of Particulars, which is the issue as to the Social Security number, are served only on counsel because they're under Certificate of Service rules that are common in all the states. So I hope I've cleared that up. If you've got other questions regarding the . . . I understand. Okay. The warrant is the complaint, so . . . It's a complaint, right. Attached to it were those various affidavits, Sailor's Act, the two affidavits, the attorneys, the rules and regulations. When we got to federal court, the only affidavit that was attached to the . . . The Statement of Estimate of Fees was, in fact, an estimate. It was a projection of future events. There's nothing in any part of the record to suggest it was in any way false or misleading. And, in fact, the case of . . . It wasn't cited in the briefs, but there's a case in the Virginia Supreme Court, Mullins v. Richland National Bank, 241 Virginia 447, which talked about the requirement to establish reasonable fees in a collection case. And the Virginia Supreme Court specifically referred to the principle that attorneys may estimate future work to be performed in a prayer for attorney fees, in a request for attorney fees. And if you go through the transcript of the hearing on the attorney fee issue, it's pages 160 and 165, counsel is referring to the Mullins factors. So, respectfully, I suggest that this court should affirm the judgment as to counts three and four, because there was no false, misleading, or deceptive statements in the Warren indebt and the affidavits. All right, counsel, let me just ask . . . I mean, I totally understand what you're saying, but just looking at the form, wouldn't it have been a lot easier if you had just put estimated on the form, or where there's that box where you can explain the numbers? Explain, look, we're not saying you owe this much right now, but this is our estimate of how much you're going to owe when this thing is done. I'm not sure because . . . I mean, I agree that the affidavit, but why not make the form clear, too? Well . . . I mean, this is going to a non-lawyer, right, and so aren't they likely . . . Isn't the concern that the defendant will pick up this form and say, oh my gosh, I owe this much money, put a check in the mail the next day, and then you're going to get attorney's fees that were never actually accrued? Well, two points. The form doesn't appear to ask for an estimate. If you . . . conceivably, you could do it. I question whether at that point . . . Well, it says it in the affidavit, and the affidavit is part of the document. I asked Mr. Griffin, who practices in Virginia in collection law, and although I just recently was admitted to Virginia Bar, I don't think I have any but one collection case there, and he says, well, when that happens, you negotiate the fees. I mean, rarely, I mean, in practical terms, and I know sometimes when we're up here in the appellate level, we're not always focusing on practical, but in practical terms, attorney fees are, I don't want to say rarely, not routinely paid at the time the settlement of the case is. I mean, cases are settled for less than the principal, so I can't dispute that . . . I mean, to the extent it would say, quote, estimate C attached affidavit, yes, that could have been there. I don't think that's material, because the affidavit talks about the estimate, and the lack of materiality, I think, as indicated in the district court's opinion, is from the fact that it was an estimate. I briefed cases in the district court, but not here, on the principle that you can't have an action for fraud based on future events, based on, you know, this is what is going to happen in the future. So, I respectfully ask this court to affirm as to counts 3 and 4 on the decision granting the 12B6. As to the Social Security number . . . Oh, sorry. I'm so sorry. Just before we move off the form and everything, are you also arguing that because this was a court filing, it's not covered anyway as a debt collection activity? That seemed to be part of . . . no? I'm not arguing that per se, because that's not what the law says. The law does apply the Fair Debt Collection Practices Act to pleadings. I'm arguing that, first of all, that it was part of a court form, and it's part of a package that establishes there was nothing false or misleading. Your only argument is materiality, not whether a petition for attorney's fees is covered at all under . . . Okay. A prayer for relief, that's it. I appreciate the distinction. I believe that the court properly, the district court below, properly distinguished a prayer for relief as actionable under the Fair Debt Collection Practices Act, in contrast to an affirmative misstatement in a document. And, I believe they referred to a couple of district court cases, including the Hart case and another action to say a prayer for relief. And, in fact, I think it was Judge Massetti on the remand in the Sayed case said the same thing. A prayer for relief is simply a communication to the court and not a false or misleading statement to the debtor. So, yes, statements and pleadings can be actionable. I suggest that there's a carve . . . I don't want to say a carve-out, that a prayer for relief is not the type of affirmative statement to a debtor that is actionable under the FDCPA. So, it's a two-part, and I thank you, Your Honor, it's a two-part argument. Social Security number. In Virginia, you still have to put the full Social Security number on a garnishment. The client forgot to redact it. I don't think there is a per se rule that it's an unfair and unconscionable practice. How could there be when there's still a court rule that says you have to put them on a certain document? There's no allegation that this was done to coerce the payment. It would be totally different if the plaintiff came in and said, this law firm called me up and says, if you don't pay this in 48 hours, we're going to file the statements, we're going to file the bill of particulars, and we're going to put your Social Security number on it, so it's out there for the public to use. That's not what happened. What happened was, counsel asked for a bill of particulars, which is a process in Virginia similar to discovery, saying, you know, show me what your case is about. They filed statements. Two of the statements had the Social Security number on it. Finally, although this is a broader issue, and certainly I don't think the court has to address it, I think Rooker-Feldman bars subject matter jurisdiction in counts three and four. The Kelly case, which I cited, was post-ExxonMobil versus Saudi Basic Industries. You don't get much comfort under Rooker-Feldman, I can tell you. We have a totally different cause of action. This is a federal cause of action based on a misstatement by a debt collector, and you may get an element decided for you, perhaps, but you can argue it if you wish. I'm going to feel more comfortable in suggesting that the court should affirm under 12b-6, and or alternatively, even though Rooker-Feldman may not apply, there may be elements of race judicata that satisfy the dis- For instance, the state court found X dollars owing in substantive amount and attorney's fees. There is nothing that says in that judgment that those amounts weren't the result of misrepresentations. Your Honor, again, I urge the court to affirm. I suggest there's adequate grounds under 12b-6. One last question. My time is up, but I'm going to ask for permission to continue. Just on this prayer for relief thing being different, I just want to make sure I understand this part of the argument, because I know we didn't give you time to talk about it today, and you're resting mostly on the materiality point. Your argument is that if this form had said $100,000 in attorney's fees, and the affidavit attached had said, look, I'm just estimating, I'm just spitballing here, I think you're going to owe $100,000 in attorney's fees, there would be no action for that, because that was just a prayer for relief. Even though it gets put in an envelope, it gets sent to the defendant, she opens it up, oh, my God, I owe $100,000 in attorney's fees, that's all fine. I think you have to take it within the framework of what is allowed by the contract. If $100,000 wasn't permitted by the contract, then you'd have a violation. I'm sorry, I thought you said that it's just a prayer for relief, so it's not a debt collection practice within the meaning of the statute. Did I misunderstand? No. Okay. But what I'm saying is the prayer for relief has to be framed within the permissible elements within the contract. Can we view it under the Debt Collection Act? I don't understand. I thought you said, I think I'm misunderstanding. I thought you said as long as it's a prayer for relief, it's just not covered under the statute. It doesn't matter how egregious the violation would be if it were covered, because it's not covered. I think the prayer for relief has to be within the framework of what's allowed by the contract. Why, if it's not covered by the statute? I mean, maybe there's some common law thing under state law, but the statute would not prohibit what I just said under your ruling. I understand what you're saying. And then to the extent I want to qualify it, I'm going to say the prayer for relief has to either be permitted by the contract or allowed by law, and one of these cases involved a prayer for 6% prejudgment interest, which is allowed in Maryland as a matter of law. So the prayer for relief is not actionable as long as it is consistent with what the law allows, a little bit of a technical distinction. Let me ask you in response to those questions, is materiality your argument? I thought your argument was that there was no misrepresentation. In other words, materiality, it seems to me, if there was a false statement, it very well might be material to a person in this position. I argued that there was no false statement. To the extent that the district court said that it could conceivably be false, it was not material because it was merely an estimate. I rely on the fact that there was no false statement. I just came out with an opinion in Powell which talked about whether it was important to a person in that position with a very low standard, and it seems to me $2,300 would be pretty important to this woman. It's important, of course, but that's what she contracted to pay. In making decisions. In other words, it's not how she would have acted, it's how she would have taken. It's the SEC standard, whether it's important to decision making. The materiality defense only arises if there is a false statement. That's right. You don't have a false statement, and then to be material, the statement has to be important to a person in that position at that lower level of standard. In light of your comment, yeah, the argument we're advancing is there's nothing false about estimating the amount of fees that are going to be incurred, and I know my time is way up, so I thank your honors very much, and Mr. Griffin is going to take up his time. Hopefully he'll get his full five minutes. I thought you covered everything for Mr. Griffin. Good morning. May it please the Court, my name is John Griffin, and I'm representing SunTrust Bank in this matter, and I think counsel did cover most everything, so I'm going to be very brief. We had a Virginia consumer with a Virginia contract at a Virginia branch. She overdrew her account in Virginia. She was sued in Virginia, went to trial in Virginia, and had a judgment against her in Virginia. There is no reason why these Maryland statutes should be applied to Virginia. The issue is conduct, and what's the conduct they're seeking to regulate? It's communication. The communication to Ms. Eliazidi in this case happened in Virginia. The only allegation in the amended complaint is that counsel prepared the complaint documents in Maryland. It doesn't allege that a single communication originated from counsel in Maryland to Ms. Eliazidi. It was filed in Virginia, and given that it was in general district court, I'm fairly certain that it was served by the Fairfax County Sheriff. There is absolutely no reason to extend these laws to actions that were completely in Virginia and had nothing to do with Maryland consumers. Just briefly on the issue regarding the prayer for relief, I think that if you look at it in the context of what the conduct is that these statutes are trying to prevent, the conduct is the communication. I believe the cases that talk about the prayer for relief talk about the prayer for relief being a communication directed to the court that the claim for attorney's fees is not directed to the debtor. I'm not sure of that. We have a couple of cases that have indicated, like on a motion for summary judgment, the argument was made that the motion is directed to the court and not to the party. We held that that is a misrepresentation. The statute uses the words, in connection with the collection of a debt. We concluded that it was. Similarly, in the Powell case, we concluded that a filing of assignment of a judgment that allegedly claimed misstated facts would implicate the Debt Collection Act. Even though it's made to the court, it's obviously served on the attorney, and it's in connection with the debt collection, and the debtor could react in response to that. I understand, Your Honor. Just one point briefly on the concern of what would happen if suggesting that this information was false and was served on the debtor. In my experience in collecting debts, I've never had a debtor send me a check for the amount that was in the complaint. It's never happened, and I wish it would. But I do not need to use any more of my time. Thank you very much. Unless you have any questions. Let me ask you one question. Yes, Your Honor. Does the record indicate any conduct on behalf of the debtor here that involved in getting that money into her account? The amount that was deposited into her account was an erroneous deposit. Was she involved in that, or was that just a bank error? I believe that there was a bank error at some point. I'm not sure if it's actually in the record. It might have been addressed in the transfer to the general. Well, it's not in the record. Let's not get into it. All right. Thank you, Your Honor. All right. Mr. Francis. I would note for the record that with respect to the Rooker-Feldman argument, we have a proceeding in the Virginia State Court now to allow my client to appeal based on the unconstitutionality of the bond statute in Virginia. I would respectfully refer the court to page 31 of the joint appendix, where it says, the amount of $9,490.82 plus reasonable attorney's fees of 25%, and the cost of the proceeding is justly due and owing from debt to SunTrust Bank. That is not a prayer for relief. That is an affirmative statement, and that is not an estimate. That is a statement of what is due and owing at that time. Mr. Cantor made a reference to Mullins v. Richland National Bank. That court held that there had to be a reasonable basis for attorney's fees collected for future work. What we've alleged is that they pulled that 20 hours out of thin air. They don't have a case. They don't have a similar case, and they don't have any known asset information. My client doesn't have any assets. If I told a court that I want to take the deposition of a debtor in this case, and I estimate it's going to take two and a half hours based on my experience in similar cases over my 20 years, is that a misrepresentation? Because I can't go and lay out a particular deposition that took two and a half hours? Two and a half hours isn't 20 hours. I said, why don't you stick with my hypothetical? My question was, if I said, based on my 20 years experience, I was going to take a deposition of a debtor, and told the court it was going to take two and a half hours in my estimate, based on my years of experience in other similar cases, would that be a misrepresentation because I couldn't come up with a particular deposition that was two and a half hours? Two and a half hours is reasonable for a deposition. I would concede that. What are you basing that on? Your experience? Yes. Your experience is the collection of all that you have done as an attorney over the years in other cases. This woman makes an estimate that to collect a debt of this size, take about 20 hours, based on her experience. You say that's a misrepresentation. Right, because the 20 hours is completely off the reservation. Okay. In a district court judgment, what you do is you go out in the hall and it takes 15 minutes. How do you sort of waive that argument by not contesting the actual award of attorney's fees? I mean, how off the reservation could it have been? That's the amount . . . I mean, she actually incurred more than that, right? When you say contesting the award of attorney's fees, do you mean in the district court? I mean that as part of your argument on Rooker Feldman, as I understand it, you are arguing we have no quarrel with the ultimate amount of fees awarded. We're just saying there were some shenanigans as part of that process, but we have no quarrel with the ultimate amount. Am I misunderstanding that? Because that seems pretty critical to your Rooker Feldman argument. I don't have a quarrel as to the amount between June of 2012 and February of 2013. Which was higher than the estimate, right? Which was higher than the estimate. Okay, so how bad could the . . . I mean, you say the estimate was sort of outrageously high. It was too high when it was made, but it turns out to be correct. It's off the reservation. Yes. That's a strong statement when it turns out it was right within that is actually smaller. Right. No, because she's talking about 20 hours for post-judgment collection, and the general district court of Fairfax County never reached that issue. And as a matter of fact, what they do is they use this 20 hours in all their affidavits. That's a number pulled out of thin air, and I have a hard time believing that it's 20 hours in every single case in which they file an affidavit. It's not. There was a reference made to garnishment, then inclusion of social security number on a garnishment paper filed with the court. Garnishment is post-judgment. What we're complaining about is the prejudgment filing of a social security number, which can lead the debtor. And if I have a client who comes in and disputes a debt, I have to tell the client, if you dispute this debt, there's a good chance they put your social security number in the court record, and the client is not going to risk identity theft. The client is going to pay the bill. I see my time is up. I'll conclude my remarks. Thank you, Mr. Francis. We'll come down and greet counsel. Take a brief recess. This is our report. We'll take a brief recess.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Pamela A. Harris